UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Elainaise Mervil,                                                           Civil No. 12-1581 DSD/AJB

                Plaintiff,

v.                                                                                        **REPORT AND RECOMMENDATION
                                                                                         ON DEFENDANTS'
                                                                                         MOTION TO DISMISS**

United States of America – FTCA,
Nicole English, Warden, Sandra Lauring, M.D.,
Donald Collins, M.D., Matthew Levisay,
Counselor, and Mary Ellen Rivers-Graham, HSA.

                Defendants.

This matter is before the court, Chief Magistrate Judge Arthur J. Boylan, 300 South Fourth Street, Minneapolis, Minnesota 55415, on Motion to Dismiss [Docket No. 48] on behalf of all defendants. Plaintiff Elainaise Mervil is a federal prisoner incarcerated at the Federal Correctional Institution at Waseca, Minnesota. The prisoner has filed a pro se complaint under the Federal Tort Claims Act ("FTCA") and for violation of civil rights under Bivens v. Six Unnamed Federal Agents, 403 U.S. 388 (1971) [Docket No. 1], alleging claims of inadequate medical care in violation of the Eighth Amendment and further alleging medical malpractice and failure to provide appropriate accommodations. Specifically, Ms. Mervil asserts that she suffers from medical conditions, particularly knee, leg and foot pains,[1] which were caused and/or aggravated as result of her assignment to living quarters that were in a location that caused her to experience significant physical hardship and mental distress.

Defendant Nicole English was the warden at FCI–Waseca during times pertinent

---

[1] Plaintiff also alleges left arm, hand, elbow and shoulder pain; back pain; emotional distress; anxiety; and inability to sleep.

to this suit; defendant Sandra Lauring, M.D., is the Clinical Director at FCI–Waseca; defendant Donald Collins, M.D., was a contract physician and Clinical Director at FCI–Waseca during times pertinent to this action; defendant Matthew Levisay is a Correctional Counselor at FCI–Waseca; and defendant Mary Ellen Rivers-Graham was Health Services Administrator at FCI–Waseca during times pertinent to this case.

Defendants moved for dismissal of the action on grounds that the plaintiff failed to make proper service on individual defendants and the Attorney General of the United States;[2] plaintiff did not exhaust administrative remedies with respect to left hand or shoulder pain, or claims against defendant Levisay;[3] official capacity claims are barred by sovereign immunity; and individual defendants are protected by qualified immunity. Defendants further argue that plaintiff has failed to provide affidavits of expert review required to maintain a medical

---

[2] Subsequent to filing of the motion for summary judgment, the plaintiff moved to compel service [Docket No. 62]. The court thereafter issued an Order [Docket No. 65], noting that plaintiff had been granted IFP status, including the assistance of the U.S. Marshal's Office for purposes of making service. The court therein ordered that the U.S. Attorney's Office provide assistance to the U.S. Marshal's Office in accomplishing institutional service, including service on the U.S. Attorney General. Defendant continues to assert failure of service on the U.S. Attorney General as grounds for dismissal. (Reply Memorandum in Support of Defendants' Motion to Dismiss [Docket No. 82]. In light of the court's Order compelling the U.S. Attorney and the U.S. Marshal's Office to fully assist in accomplishing service of process, the court deems the U.S. Attorney General to have received institutional service of process and will not consider sufficiency of service of process as a basis for dismissal. In any event, plaintiff requested leave to make service on the Attorney General (Resp. to Reply Memo. [Docket No. 84] if necessary, and such leave would be granted, but for the ultimate decision herein.

[3] In this instance the court's review of the treatment for left hand and shoulder pain with respect to medical expert review requirements, and as Eighth Amendment civil rights violations, is no different than the review with respect to her knee and leg conditions. Failure to exhaust administrative remedies under the the PLRA does not deprive federal courts of subject matter jurisdiction. Chelette v. Harris, 229 F.3d 684, 686-88 (8th Cir. 2000). The court therefore declines to consider the exhaustion claim and will address plaintiff's medical claims collectively.

malpractice claim under the FTCA, and her Eighth Amendment civil rights claims cannot be brought under the FTCA.

This matter has been referred to the magistrate judge for report and recommendation pursuant to 28 U.S.C. § 636 and Local Rule 72.1.  For reasons discussed below the magistrate judge concludes that defendants' motion to dismiss should be granted and the action be dismissed with prejudice.

## Background and Claims

Plaintiff Elainaise Mervil's designation to FCI-Waseca commenced on March 7, 2009.  She did not initially claim any painful medical conditions though she was prescribed medications for headaches, as well as esophageal reflux and benign essential hypertension.[4]  She experienced right knee pain on April 23, 2009, and was diagnosed with probable osteoarthritis.  On May 6, 2009, plaintiff reported pain and swelling in both knees and in her left foot.  X-rays indicated early degenerative osteoarthritis in both knees.[5]  On May 11, 2009, Ms. Mervil was examined by Dr. Willis who diagnosed a cyst on the left knee involving swelling from excess fluid on the knee and a like condition on the right knee.[6]  Sulfasalazine was prescribed.[7]  On June 3, 2009, plaintiff reported severe knee and leg pain and inability to use stairs.  She was provided

---

[4] Aff. of Rivers-Graham, ¶ 5  [Docket No. 56].  The affidavit of Rivers-Graham contains objective fact information regarding medical treatment which the plaintiff does not dispute and is herein cited.  The affidavit further includes several observations and conclusions by the affiant regarding the plaintiff's mobility and use of the cane which the plaintiff disputes.

[5] Id., ¶ 6-7.

[6] Id., ¶ 8.

[7] Exhibit 1, BOP000484.  Sulfasalazine is an antirheumatic drug that is prescribed in tablet form to treat pain and swelling from arthritis.  American College of Rheumatology website, www.rheumatology.org, Medications, viewed November 7, 2013.

a one-year first floor cell[8] and lower bunk permit.[9]  An orthopedic specialist examined plaintiff's knees on July 27, 2009, and recommended use of knee sleeves when walking, along with strengthening exercises, while surgery was not found to be necessary.  Sleeves and exercise instructions/therapy were discussed on October 26, 2009, though plaintiff states she did not received the exercises in the mail or from staff at FCI-Waseca.[10]  The first floor cell restriction and lower bunk permit were subsequently extended to September 30, 2010.[11]

On July 30, 2010, plaintiff Mervil's first floor restriction was removed and she was placed in basement living quarters, based at least in part upon Health Services Administrator Mary Ellen Rivers-Graham's receipt of reports of the plaintiff using stairs in the housing units to visit friends and watch television–an observation that plaintiff disputes.[12]  Plaintiff alleges that the basement living area is not handicapped-friendly, and requires use of stairs.[13]  She received the recommended knee sleeves on August 13, 2010, and a cane was provided to her on August 23, 2010.  Ms. Mervil continued to experience and frequently report knee and leg pain through August, September, and October 2010.[14]  Meanwhile, plaintiff also suffered from dizziness,

---

[8] Plaintiff desired a first floor cell as a preferred living accommodation while the BOP characterizes such assignment as a restriction to that area.

[9] Aff. of Rivers-Graham, ¶ 9.

[10] Aff. of Rivers-Graham, ¶ 10.  Complaint [Docket No. 1], page 2.

[11] Id., ¶ 11.

[12] Complaint, page 3, ex. M.

[13] Id., page 4.

[14] Id., pp. 4-6, ex. O-Y; Aff. of Rivers-Graham, ¶ 13.

headaches, and neck pain, possibly related to hypertension.[15] On November 21, 2010, Ms. Mervil was found unconscious in a basement rest room and was sent to a hospital, though no immediate needs were apparent on arrival.[16] Ultrasounds done on both knees on November 5, 2010, did not show fluid or cysts on either knee.[17]

**Complaint.** Plaintiff Elainaise Mervil filed an initial pleading entitled "Complaint filed pursuant to FTCA and Bivens" in which she alleges that the defendant United States, through its agents and employees, committed acts of medical negligence, denial of medical treatment, and deliberate indifference resulting in pain and deterioration of her physical condition with respect to her knees, legs, back; and left arm, hand, elbow and shoulder.[18] The complaint further cites the history of events and circumstances in which the plaintiff experienced medical issues involving a need for treatment and/or accommodations for pain as referenced above.  Finally, Ms. Mervil alleges each individual defendant's deliberate indifference to a serious medical need.[19]

**Civil Rights–Bivens**

Plaintiff Elainaise Mervil's constitutional claim in this matter is that individual defendants violated her civil rights with respect to the loss of her first-floor restriction, her placement in basement living quarters, and failure to assist in getting her first-floor restriction

---

[15] Complaint, page 6, ex. Z.

[16] Id., page 6, ex. Z-AA; Aff. of Rivers-Graham, ¶ 17.

[17] Aff. of Rivers-Graham, ¶ 16.

[18] Complaint, pp. 1-2

[19] Id., ¶¶ ff, hh, ll, mm.

returned.[20] The complaint describes defendants' alleged conduct as being deliberately indifferent such that defendant Rivers-Graham showed deliberately indifference to a serious medical need by refusing plaintiff's request for assistance in getting her first-floor restriction returned and a prescription for a walker to replace a cane which aggravated her arm and shoulder pain. Defendant Levisay was likewise deliberately indifferent by refusing plaintiff's multiple requests to be moved to the first-floor; defendant Warden Nicole English was deliberately indifferent by failing to intervene and order first-floor quarters, as well as handicap accessible restrooms and showers; and defendant Dr. Sandra Lauring was also deliberately indifferent in her failure to reinstate the first-floor restriction and access to handicap suitable restrooms and showers. The complaint does not contain a claim that the prisoner was denied specific medical care, though it does assert that she suffered increased physical pain and emotional distress as a result of her placement in basement living quarters.

To establish an Eighth Amendment claim the plaintiff must show a serious deprivation of "the minimal civilized measure of life's necessities" and "offending conduct [that is] wanton." Key v. McKinney, 176 F.3d 1083, 1086 (8th Cir. 1999) (quoting Wilson v. Seiter, 501 U.S. 294, 298, 302, 111 S.Ct. 2321 (1991)). Indeed, a plaintiff must establish that she was forced to endure conditions which amounted to "unnecessary and wanton infliction of pain." Weekly v. Cahalin, 2006 WL 2331186 (W.D. Mo., Aug. 8, 2006) (citing Gregg v. Georgia, 428 U.S. 153 (1976)). Conditions are not cruel and unusual simply because they are harsh or uncomfortable. Id. at *1 (citing Farmer v. Brennan, 511 U.S. 825, 832 (1994). An Eighth

---

[20] Plaintiff discusses her UNICOR employment at FCI-Waseca and her decision to quit the UNICOR job with respect to aggravation of pain and medical conditions, and lost benefits, but she makes no direct claims with regard to prison employment.

Amendment action challenging conditions of confinement requires a showing that jail officials have been deliberately indifferent to an inmate's health or safety. Key v. McKinney, 176 F.3d at 1086.

The complaint in this case does not contain allegations sufficient to establish a cause of action for an Eighth Amendment violation. In particular, plaintiff fails to allege any conduct that can be construed as wanton. Although she has certainly alleged deprivation of living quarters that would better accommodate her medical conditions, the assertion of a civil rights violation is essentially based wholly upon the plaintiff's contention that her medical circumstances compel the inference that failure to accommodate her desire for a first-floor placement constituted an unnecessary and wanton infliction of pain. There are no direct facts that support a claim that any individual defendant intended or acted to deprive Ms. Mervil of "the minimal civilized measure of life's necessities" or acted in a manner evidencing wanton conduct, and the inference suggested by the plaintiff is not warranted.

**Qualified Immunity.** The individual defendants in this action have also moved for dismissal of claims against them on qualified immunity grounds and that is the context in which the parties argue the matter of liability for civil rights violations. The doctrine of qualified immunity protects a defendant from liability for alleged misconduct which was reasonably believed to be lawful or which was not clearly established as unlawful at the time the conduct occurred. The Supreme Court has long held that a government official sued in his or her individual capacity "may assert personal immunity defenses, such as objectively reasonable reliance on existing law." Hafer v. Melo, 502 U.S. 21, 25; 112 S.Ct. 358, 362 (1991). Thus, government officials "insofar as their conduct does not violate clearly established statutory or

constitutional rights of which a reasonable person would have known," are shielded from liability for civil damages.  Hartley v. Fine, 780 F.2d 1383, 1387 (8th Cir. 1985)(citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).  The qualified immunity standard "gives ample room for mistaken judgments by protecting all but the plainly incompetent or those who knowingly violate the law." Wiegand v. Spadt, 317 F.Supp.2d 1129, 1137 (D. Neb. 2004)(quoting Hunter v. Bryant, 502 U.S. 224, 229, 112 S.Ct 534, 537 (1991)).  Qualified immunity is immunity from suit rather than a mere defense and should be decided by the court long before trial, though the plaintiff is given the benefit of all relevant inferences on summary judgment, and a party is not entitled to judgment on qualified immunity grounds where genuine dispute exists concerning predicate facts material to the issue.  Wiegand v. Spadt, 317 F.Supp.2d at 1137 (citing Pace v. City of Des Moines, 201 F.3d 1050, 1056 (8th Cir. 2000)).  "Predicate facts" consist of only the relevant circumstances and the acts of the parties themselves, and do not include the conclusions of others with regard to the reasonableness of those actions.  Wiegand at 1137 n.3 (citing Pace, 201 F.3d at 1056).  Moreover, mere assertions of state of mind such as conspiratorial purpose, malice, bad faith, or retaliatory motive are insufficient to defeat qualified immunity from liability for conduct that would protected in the absence of the alleged improper state of mind.  Garza v. Carlson, 877 F.2d 14, 17 (8th Cir. 1989).

    Defendants in this matter assert that as a matter of law there was no violation of plaintiff's constitutional rights with respect to her medical care and treatment, including her cell assignment, and that they are therefore entitled to qualified immunity protections from liability for individual damages.  In that regard the defendants cite the medical care that was provided for Ms. Mervil's osteoarthritis, arm and elbow pain, back pain, hypertension, and post-menopausal

bleeding.  Plaintiff had multiple visits with treating physicians, Dr. Collins and Dr. Lauring, and determinations regarding plaintiff's job and first-floor restrictions were made in consultation with doctors.  Plaintiff on the other hand cites no prescription or recommendation from a medical professional that she be continued or returned to the first-floor restriction, and importantly, she references no direct medical diagnosis or evidence that establishes, or compels an inference that any defendant(s) alone or together, acted through indifference or with affirmative desire to cause Ms. Mervil to suffer pain.

Upon review of the record before the court, and further based upon its determination herein that there have been no violations of plaintiff's constitutional rights, the court concludes as a matter of law that plaintiff cannot show that the conduct of any defendant violated clearly established statutory or constitutional rights of which a reasonable person would have known.  All individual defendants are entitled to qualified immunity from individual liability for money damages on constitutional claims alleged in this matter.

**Official Capacity**

The complaint in this matter does not explicitly state that the individual defendants are sued in both their individual and official capacities.  Nonetheless, defendants interpret the complaint to include official capacity claims and move to dismiss such claims on grounds that an official capacity claim involves only the defendant's employer, i.e. the United States, as the real party in interest.  Therefore, the court lacks subject matter jurisdiction and the official capacity claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).  Plaintiff does not address the official immunity issue in her pleading and in her Traverse to Defendant's Motion to Dismiss she merely reasserts her FTCA claim against the United States based upon

the official capacity of staff defendants.[21]

**Sovereign Immunity.** An official capacity suit is essentially a suit against the government entity, i.e. the United States, and any damages recovery may be obtained from the government entity itself. Kentucky v. Graham, 474 U.S. 163, 166, 105 S.Ct. 3099, 3105 (1985). In order to establish governmental liability in a civil rights action, the entity must be a moving force behind the alleged deprivation of a federal right. In addition, in an official capacity suit the entity's policy or custom must have played a role in the violation of federal law as alleged. Id., 474 U.S. at 166, 105 S.Ct. at 3105. Also, it is well-settled that in a action under Bivens v. Six Unknown Federal Narcotics Agents, 403 U.S. 388, 915 S.Ct. 1999, a plaintiff may sue only individuals who allegedly violated his or her constitutional rights while acting under color of federal law. Bivens does not authorize suits directly against the United States or any of its agencies for alleged constitutional misconduct. Schutterle v. United States, 74 F.3d 846, 848 (8th Cir.) cert. denied, 517 U.S. 1210 (1996); Laswell v. Brown, 683 F.2d 261, 268 (8th Cir. 1982), cert. denied, 459 U.S. 1210, 103 S.Ct. 1205 (1983).

The federal government itself cannot be sued in a Bivens action, because it is immune from such suits under the doctrine of sovereign immunity. See Manypenny v. United States, 948 F.2d 1057, 1063 (8th Cir. 1991). The United States and its agencies can be sued only if the federal government has waived its immunity. Manypenny, 948 F.2d at 1063. Furthermore, any such waiver must be "expressed unequivocally" by Congress. Id. Plaintiff has not alleged any express congressional authorization for an official capacity suit under the

---

[21] Plaintiff's Traverse to Defendant's Motion to Dismiss, or in the alternative, for Summary Judgment, page 6 [Docket No. 74].


circumstances of this action. Therefore, to the extent that plaintiff may seek damages for constitutional violations under Bivens, from either the United States or agents acting in an official capacity, such suit is barred by the doctrine of sovereign immunity. However, this immunity does not apply to claims asserted under the FTCA.

**Standard of Review on Motion to Dismiss FTCA Claims**

**Failure to State a Cause of Action.** Defendant United States moves to dismiss plaintiff's FTCA claim for damages on grounds that she fails to state a cause of action under circumstances in which he has failed to comply with expert review requirements for a medical malpractice claim under Minn. Stat. § 145.682.

A complaint that is being challenged on motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) does not need to contain detailed factual allegations to survive the motion, but "[a] pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" Ashcroft v. Iqbal, 556 U.S. 662, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555, 127 S.Ct. 1955 (2007)). A complaint must contain sufficient facts to state a claim that is not merely conceivable, but rather, is plausible. Twombly, 127 S.Ct. at 1974. When reviewing a motion to dismiss, the claim must be liberally construed, assuming the facts alleged therein to be true and drawing all reasonable inferences from those facts in the plaintiff's favor. Twombly, 127 S.Ct. at 1964-65. A complaint should not be dismissed simply because a court is doubtful that the plaintiff will be able to prove all of the factual allegations contained therein. Id. Accordingly, a well-pleaded complaint will survive a motion to dismiss even where the likelihood of recovery appears remote. Id. at 1965. However, a plaintiff cannot rely upon general and conclusory allegations to

survive a Rule 12(b)(6) motion.  Martin v. Sargent, 780 F.2d 1334, 1337 (8th Cir. 1985).

**Rule 56: Summary Judgment.**  When matters outside the pleadings are presented with a Rule 12(b)(6) motion, and those matters are not excluded by the court, the motion should be treated as a Fed. R. Civ. P. 56 motion for summary judgment.  However, on a motion to dismiss for failure to state a claim, the court may consider extraneous materials that are outside the complaint if such materials are "necessarily embraced" by the pleadings. Piper Jaffray v. Nat'l Union Fire Insur. Co., 967 F. Supp. 1148, 1152 (D. Minn. 1997) (citing Vizenor v. Babbitt, 927 F. Supp. 1193, 1198 (D. Minn. 1996)).  See also  Parnes v. Gateway 2000, Inc., 122 F.3d 539, 546 n.9 (8th Cir. 1997).  Materials which are necessarily embraced by pleadings may include copies of underlying pleadings and documents incorporated by reference.  Piper Jaffray, 967 F. Supp at 1152.  In addition, materials which are public record may be considered in deciding a motion to dismiss.  E.E.O.C. v. Am. Home Prod., Corp., 199 F.R.D. 620, 627 (N.D. Iowa 2001) (citing Missouri ex rel. Nixon v. Coeur d'Alene Tribe, 164 F.3d 1102, 1107 (8th Cir. 1999)).  On the other hand, "written or oral evidence in support of or in opposition to the pleading that provides some substantiation for and does not merely reiterate what is said in the pleading," may be construed as "matters outside the pleadings," requiring treatment of the motion as one for summary judgment.  Hamm v. Rhone-Poulenc Rorer Pharm., Inc., 187 F.3d 941, 948 (8th Cir. 1999).

In support of its motion to dismiss the United States has submitted numerous declarations containing fact information and which further present exhibits including medical records, administrative remedy documents, and other administrative materials.  Similarly, plaintiff's initial complaint was accompanied by administrative remedy documents and medical

reports. Based upon the submissions by both parties of matters outside the pleadings, the court will construe the present motion to dismiss the FTCA action as one for summary judgment.

**Medical Malpractice**

Plaintiff argues that expert evidence, including an affidavit of expert review, is not necessary to demonstrate factual grounds for malpractice liability under circumstances in which her medical circumstances have been established through medical records, administrative remedy documents and other exhibits, and the pertinent "alleged facts are within the general knowledge of laypersons."[22] Plaintiff also contends that more recent evaluation of her condition and the determination to re-instate her first-floor restriction, with handicapped accessible accommodations, obviates the need for an expert witness.

Defendants do not dispute that an action for breach of the duty to provide medical care is properly brought as a case against the United States under the FTCA. In its consideration of a medical negligence action under the FTCA the court applies the law of the state in which the alleged tort occurred. Oslund v. United States, 701 F. Supp. 710, 712 (D. Minn. 1988) (citing Mandel v. United States, 793 F.2d 964, 968 (8th Cir. 1986)). Minnesota law pertaining to medical malpractice suits at Minn. Stat. § 145.682[23] requires affidavits of expert review for the

---

[22] Plaintiff's Response to Reply Memorandum, page 3 [Docket No. 84].

[23] Minn. Stat. §145.682 (2002) states in pertinent part:

> **Subd. 1. Definition.** . . . .
>
> **Subd. 2. Requirement.** In an action alleging malpractice, error, mistake, or failure to cure, whether based on contract or tort, against a health care provider which includes a cause of action as to which expert testimony is necessary to establish a prima facie case, the plaintiff must: (1) unless otherwise provided in subdivision 3, paragraph (b), serve upon defendant with the summons and

---

complaint an affidavit as provided in subdivision 3; and (2) serve upon defendant within 180 days after commencement of the suit an affidavit as provided by subdivision 4.

   **Subd. 3. Affidavit of expert review.** The affidavit required by subdivision 2, clause (1), must be by the plaintiff's attorney and state that:

   (a) the facts of the case have been reviewed by the plaintiff's attorney with an expert whose qualifications provide a reasonable expectation that the expert's opinions could be admissible at trial and that, in the opinion of this expert, one or more defendants deviated from the applicable standard of care and by that action caused injury to the plaintiff; or

   (b) the expert review required by paragraph (a) could not reasonably be obtained before the action was commenced because of the applicable statute of limitations. If an affidavit is executed pursuant to this paragraph, the affidavit in paragraph (a) must be served on defendant or the defendant's counsel within 90 days after service of the summons and complaint.

   **Subd. 4. Identification of experts to be called.** (a) The affidavit required by subdivision 2, clause (2), must be signed by each expert listed in the affidavit and by the plaintiff's attorney and state the identity of each person whom plaintiff expects to call as an expert witness at trial to testify with respect to the issues of malpractice or causation, the substance of the facts and opinions to which the expert is expected to testify, and a summary of the grounds for each opinion. Answers to interrogatories that state the information required by this subdivision satisfy the requirements of this subdivision if they are signed by the plaintiff's attorney and by each expert listed in the answers to interrogatories and served upon the defendant within 180 days after commencement of the suit against the defendant.

   (b) and (c) omitted.

   **Subd. 5. Responsibilities of a plaintiff as attorney.** If the plaintiff is acting pro se, the plaintiff shall sign the affidavit or answers to interrogatories referred to in this section and is bound by those provisions as if represented by an attorney.

   **Subd. 6. Penalty for noncompliance.** (a) Failure to comply with subdivision 2, clause (1) within 60 days after demand for the affidavit results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case.

purpose(s) of establishing that the malpractice allegations have merit. Id.. The statute first requires that the complaint be accompanied by an affidavit by the plaintiff or her counsel stating that a qualified expert has reviewed the facts of the case and, in the expert's opinion, the plaintiff has been injured as a result of the failure by one or more defendants to meet the standard of care. Minn. Stat. § 145.682, subd. 3(a). Thereafter, within 180 days following commencement of the action, the plaintiff must produce either an affidavit of a medical expert, or an interrogatory response, therein identifying expert trial witnesses, the facts and opinions as to which the expert(s) will testify, and a summary of each expert(s) opinions. Minn. Stat. § 145.682, subd. 4. The penalty for failure to comply with the expert review requirements is mandatory dismissal. Id., subd. 6.

Determination of whether the plaintiff is in need of medical treatment, describing the nature of the affliction and necessary treatment, and evaluation of the adequacy of a

---

(b) Failure to comply with subdivision 2, clause (2), results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case,

(c) Failure to comply with subdivision 4 because of deficiencies in the affidavit or answers to interrogatories results, upon motion, in mandatory dismissal with prejudice of each cause of action as to which expert testimony is necessary to establish a prima facie case, provided that:

(1) the motion to dismiss the action identifies the claimed deficiencies in the affidavit or answers to interrogatories;

(2) the time for hearing the motion is at least 45 days from the date of service of the motion; and

(3) before the hearing on the motion, the plaintiff does not serve upon the defendant an amended affidavit or answers to interrogatories that correct the claimed deficiencies.

defendant's care are technical matters requiring expert review and opinion. See Paulos v. Johnson, 502 N.W.2d 397, 400 (Minn. App. 1993). The primary purpose for the statutory expert review requirement in a malpractice action is elimination of nuisance malpractice suits. Lombardo v. Seydow-Weber, 529 N.W.2d 702, 703 (Minn. App. 1995) (review denied). Obviously, a plaintiff's inability to obtain an expert affidavit might serve to validate the purpose of the statute.

Plaintiff acknowledges that she did not timely serve expert affidavits required under Minn. Stat. § 145.682, but argues that no affidavit should be required under circumstances in which medical records and administrative remedy documents indicate the nature and severity of her affliction and the medical need for first-floor accommodations and handicapped accessible facilities. Plaintiff makes no clear distinction between the requirement for an initial affidavit of expert review and the subsequent requirement for identification of expert witnesses to testify at trial to establish the necessity for particular treatment. Instead, she relies upon her own general conclusion that the defendants' intentional and malicious action of moving her to basement living quarters is sufficient to establish defendants' liability under the FTCA.[24]

Meanwhile, there is no specific medical evidence in the record that clearly supports a claim of medical negligence with regard to diagnosis, medication, physical therapy, or other medical treatment options. The record establishes that Ms. Mervil had osteoarthritis and pain in her knees, and there is no dispute in that regard. There is disagreement, however, with

---

[24] Plaintiff's written argument moves quite freely and interchangeably between discussion of elements of Bivens liability on the one hand, i.e. deliberate indifference and maliciousness, and requirements of a medical negligence action on the other, i.e. expert medical opinion.

respect to the extent that her physical condition caused significant mobility problems. Plaintiff seems to contend that first-floor accommodations were the only reasonable option and defendants were negligent in refusing to make that accommodation. Defendants provided a first-floor restriction and a lower bunk pass in June 2009, which was extended to September 2010, but thereafter determined that plaintiff was sufficiently ambulatory to allow relocation to basement quarters and she was provided knee sleeves and a cane.

There is nothing in the record in this case to indicate that in the judgment of treating medical personnel a first-floor restriction was medically necessary. The court expressly **finds** that expert testimony would be required to establish both a medical need for the accommodation sought by the plaintiff in this matter and a deviance from the standard of care based upon the defendants denial of such accommodation. See Sorenson v. St. Paul Ramsey Medical Center, 457 N.W. 2d 188, 191 (Minn. 1990) (citing Chizmadia v. Smiley's Point Clinic, 873 F.2d 1163 (8th Cir. 1989)). Whether the failure to provide a first-floor restriction can be recognized as evidence of negligence in this instance is not a determination that can be made solely on the basis of common knowledge and experience of a lay person, and without the benefit of expert testimony. See Tousignant v. St. Louis County, 615 N.W.2d 53, 58-60 (Minn. 2000). In the absence of an affidavit of expert review and identification of an expert witness and summary of expert testimony, plaintiff Elainaise Mervil has failed to establish the applicable standard of care and any deviation from such standard of care and therefore has not alleged a prima facie case of medical malpractice. With respect to allegations of negligence and liability under the FTCA, plaintiff's claim should be dismissed due to the failure to submit the statutorily required affidavit of expert review, and dismissal of the FTCA claim is further mandated as a

result of the failure to provide an affidavit of expert identification.

## RECOMMENDATION

Based upon the foregoing discussion, the magistrate judge **hereby recommends** that the defendants' Motion to Dismiss be **granted** [Docket No. 48] and that plaintiff Elainaise Mervil's complaint alleging FTCA claims against the United States, as well as claims against all of the individually named defendants for violation of civil rights under <u>Bivens v. Six Unnamed Federal Agents</u>, 403 U.S. 388 (1971), be **dismissed** with prejudice [Docket No. 1].

Dated: <u>January 6, 2014</u>

      <u>s/Arthur J. Boylan</u>
      Arthur J. Boylan
      United States Chief Magistrate Judge

Pursuant to Local Rule 72.2(b), any party may object to this Report and Recommendation by filing with the Clerk of Court, and by serving upon all parties, written objections which specifically identify the portions of the Report to which objections are made and the bases for each objection. This Report and Recommendation does not constitute an order or judgment from the District Court and it is therefore not directly appealable to the Circuit Court of Appeals. Written objections must be filed with the Court before January 21, 2014.